IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>ex rel. YOASH GOHIL<br><br>Plaintiff/Relator<br><br>v.<br><br>AVENTIS PHARMACEUTICALS, INC., et al<br><br>Defendants | Civil Action No. 02-cv-2964 |

## UNITED STATES' STATEMENT OF INTEREST IN RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED *QUI TAM* COMPLAINT

The United States, the real party in interest in this action, hereby submits this Statement of Interest pursuant to 28 U.S.C. § 517 to respond to certain arguments raised in Defendant Aventis's Motion to Dismiss the Relator's Second Amended Complaint. The United States remains a real party in interest in this matter, even though it has not intervened in the action. United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 231 (1st Cir. 2004). The False Claims Act (FCA), 31 U.S.C. § 3729 *et seq.*, is the United States government's primary tool used to redress fraud on the government. As such, the statute should be read broadly to reach all fraudulent attempts to cause the government to pay out sums of money. United States v. Neifert-White, 390 U.S. 228, 233 (1968). Thus, the United States has a keen interest in the development of the law in this area and in the correct application of the law in this, and similar, cases.

The United States submits this brief in response to certain of the legal arguments by defendant. First, although the United States takes no position on whether relator's complaint

here does indeed satisfy the particularity requirements of Rule 9(b), the United States submits that, to the extent the defendant suggests that Rule 9(b) requires the identification of a specific false claim, it seeks to impose too rigid of a standard.[1] Second, defendant's reliance on a false certification argument is misplaced as no certification is required to establish the falsity of claims that are the result of illegal kickbacks or that are for non-covered, off-label uses. Third, contrary to defendant's implication, the FCA does not contain a double falsehood requirement. Fourth, defendant incorrectly suggests that all claims relating to the marketing of its drug Anzemet were the subject of a prior release by the United States.

I.  **Defendants Seek to Impose Too Rigid a Pleading Standard in False Claims Act Cases.**

The Defendants argue that Relator's complaint must be dismissed because of his "failure to identify even a single actual claim for reimbursement that was improperly made and paid." Def. Br. At 22. While the United States does not take any position on the sufficiency of this relator's complaint, the United States submits that, in general, the identification of specific false claim is not an absolute prerequisite to satisfying the particularity requirement of Rule 9(b) in FCA cases. So long as the complaint as a whole is sufficiently particular to strengthen the inference of fraud beyond possibility, a court may conclude that Rule 9(b) is satisfied. To the extent that defendants contend that relator's complaint must fail because it did not identify specific false claims, defendants seek to impose too rigid a pleading standard in FCA cases.

As the Court in <u>United States ex rel Underwood v. Genentech</u> recognized, citing the

---

[1] The United States submits that if relator's complaint is dismissed, the dismissal should be without prejudice to the United States. See <u>United States ex rel. Williams v. Bell Helicopter Textron Inc.</u>, 417 F.3d 450, 455 (5th Cir. 2005).

Third Circuit:

> Under Fed. R. Civ. P. 9(b), plaintiffs must plead with particularity the circumstances of the alleged fraud. They need not, however plead the date, place or time of the fraud, so long as they use an alternative means of injecting precision and some measure of substantiation into their allegations of fraud.

720 F. Supp 2d 671, 676 (E.D. Pa. June 2, 2010)(quoting Rolo v. City Investing Co. Liquidating Trust, 155 F3d 644, 658 (3d Cir. 1998)).

As a general matter, the identification of a specific false claim is not an absolute prerequisite to pleading a viable FCA claim. Although FCA liability attaches to the claim for payment, courts have observed that whether specific claims must be identified for a complaint to satisfy Rule 9(b)'s particularity requirement will depend on the circumstances of each case. As the court stated in United States ex rel Schumann v. AstraZeneca PLC, 2010 WL 4025904*9 (E.D. Pa. Oct. 13, 2010), in holding that the relator did not need to identify and plead the details of any claim,

> "Requiring the relator to plead the details of an actual claim would not place AZ in a better position to answer and defend the charges of fraud against it. Here, the "false claims" are only false because they are based on the kickback fraud between AZ and Medco or the "false" best price reports submitted by AZ. If the relator had described the details of an actual claim submitted by a government-plan patient or a state Medicaid office and included specifics, such as the contents of the claim, who submitted it, the date, the amount claimed, and the amount actually due, AZ would not be in a better position to defend itself because neither the patients nor the states are being charged with fraudulent conduct."

See also Genentech supra at 677 (requiring the pleading of particularized evidence of a false claim contravenes the Third Circuit's "flexible" interpretation of Rule 9(b) and "would effectively negate the Third Circuit's instruction that 'Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'");

United States ex rel. Grubbs v. Ravikumar Kanneganti, M.D., et al., 565 F.3d 180, 185-6 (5th Cir. 2009) (Rule 9(b) requires only that the complaint's allegations be "simple, concise and direct" and that they "make relief plausible, not merely conceivable, when taken as true"); United States ex rel. Lusby v. Rolls-Royce Corp., 570 F.3d 849, 853-855 (7th Cir. 2009) ("it is enough to show, in detail, the nature of the charge, so that vague and unsubstantiated accusations of fraud do not lead to costly discovery and public obloquy"); United States ex rel. Rost v. Pfizer, Inc., 507 F.3d 720, 732 (1st Cir. 2007).

Thus, in off-label cases, where the alleged false claims were submitted not by the defendant, but instead by a third party, a relator "need not allege the details of particular claims, so long as 'the complaint as a whole is sufficiently particular to pass muster under the FCA.'" See United States ex rel. West v. Ortho-McNeil Pharm., Inc., 2008 WL 435497, at *18 (D. Mass. Feb. 19, 2008) (quoting Rost, 507 F.3d at 732)). Such an analysis is consistent with FCA cases in which courts have found that when a complaint sets forth with particularity allegations of a fraudulent scheme or course of conduct, it is not also necessary to identify specific claims because doing so adds little to the sufficiency of the complaint as a whole. See, e.g., United States ex rel. Singh v. Bradford Regional Medical Center, 2006 WL 2642518, at *7 (W.D. Pa. 2006) ("[T]he falsity of the instant claims does not turn on anything unique to any individual claim or that would be revealed from an examination of any claim, but rather the claims 'are false because of the improper financial arrangements between [defendant] and the physicians.'"). In evaluating such matters, the strength of the inference of fraud on the government may be measured by, for example, factual or statistical evidence tending to show fraud beyond possibility. See West, 2008 WL 435497, at *18. The question for the Court is not whether a

4

specific false claim is identified, but rather, whether this relator's complaint pleads a fraudulent scheme with enough particularity.

## II. Defendant's Reliance on "Certifications" is Misplaced.

Courts have repeatedly recognized that claims for payment for services induced by kickbacks or for goods and services that are not covered by federal health care programs are false claims under the FCA. See e.g., United States ex rel. Schmidt v. Zimmer, Inc., 386 F.3d 235, 243 (3d Cir. 2004) (kickbacks); United States ex rel. Conner v. Salina Regional Health Ctr., 543 F.3d 1211, 1223 n.8 (10th Cir. 2008) (kickbacks); United States ex rel. McNutt v. Haleyville Medical Supplies, 423 F.3d 1256, 1259-1260 (11th Cir. 2005) (kickbacks); United States v. Rogan, 517 F.3d 449 (7th Cir. 2008) (kickbacks); United States ex rel. Franklin v. Parke-Davis, 147 F. Supp. 2d 39, 51-53 (D. Mass. 2001) (Parke-Davis I) (off-label claims); Strom ex rel. U.S. v. Scios, Inc., 676 F. Supp. 2d 884, 891 (N.D. Cal. 2009) (off-label claims). While some of these decisions, particularly those dealing with illegal kickbacks, have unnecessarily focused on "false certifications" made by the defendants, the presence of such certifications is not necessary to render a claim for goods or services false. What makes a claim "false" is its ineligibility for payment – a condition that all claims tainted by kickbacks or for non-covered goods or services satisfy. The question of "falsity" turns on whether the claimant is entitled to payment "in light of applicable law." United States ex rel. Oliver v. The Parsons Co., 195 F.3d 457, 463 (9th Cir. 1999).

Although one way in which a claim may be "false" under the FCA is where it rests upon a false certification of compliance with a condition of payment (either express or implied), it is not necessary to examine any "certifications" made in connection with claims for goods or services

that do not conform to the government's stated criteria for payment. When the government has made clear that payment is conditioned upon certain requirements or the confines of what it will cover in a federal health care program, a claim for goods or services that fall outside those criteria or confines is "false" regardless of what certifications are made in conjunction with that claim. See, e.g., Scolnick v. United States, 331 F.2d 598, 599 (1st Cir. 1964) (defendant liable under the FCA where he cashed check erroneously issued to him); United States v. McLeod, 721 F.2d 282, 284 (9th Cir. 1983) (same). Thus, Aventis' argument that there is no false certification here does not advance their argument that this complaint should be dismissed.[2]

### A. Claims for Off-Label, Non-Covered Uses are False Claims.

Aventis incorrectly argues that Counts III and IV of relator's complaint should be dismissed "to the extent they are based on allegations that health care providers submitted false claims for reimbursement as a result of prescribing Taxotere for off-label treatments." Def. Br. At 27-32.

Under the FCA, a claim is "false" if, among other things, it seeks payment for treatment that is not statutorily eligible for reimbursement. Medicare covers only reasonable and necessary medical services. 42 U.S.C. § 1395y(a)(1)(A); *see also* 42 U.S.C. § 1320c-5(a)(1) (requiring that the services provided be economical medical services, and even then only to the extent medically

---

[2] Similarly, where a defendant knowingly causes a third party to present an ineligible claim for payment to the government, the critical question is not what the third party knew or certified at the time. What matters instead is whether the defendant knew the claim was "false," because a material condition of payment was not satisfied, and then knowingly caused its submission to the government, either directly or through a third party. See Schmidt, 386 F.3d at 243-44 (key question is defendant's knowledge, not claimant's knowledge); United States v. Rivera, 55 F.3d 703, 707 (1st Cir. 1995), United States ex rel Hendow v. University of Phoenix, 461 F.3d 1166, 1171-73 (9th Cir. 2006).

necessary). Indeed, the Medicare statute contains an express condition that "no payment may be made" for items or services which "are not reasonable and necessary for the diagnosis and treatment of illness or injury." 42 U.S.C. § 1395y(a); 42 C.F.R. § 411.15(k)(1); *see also Heckler v. Ringer*, 466 U.S. 602, 605 (1984) (recognizing that this provision "precludes reimbursement for any items or services . . . which are not reasonable and necessary for the diagnosis or treatment of illness or injury"). Medicare's guidance regarding coverage for an off-label use similarly ties coverage to medical necessity. That guidance provides that coverage is only appropriate where the off-label use is "medically accepted," taking into account certain drug compendia (*e.g.*, Drugdex, American Hospital Formulary Service, and U.S. Pharmacopeia-Drug Information), authoritative medical literature, and/or accepted standards of medical practice. *See* Medicare Benefit Policy Manual Ch. 6 § 30 & Ch. 15, §§ 40.4.1 & .2. Thus, although physicians are free to prescribe drugs for off-label uses, federal health care programs do not cover *all* uses of *all* drugs.[3] Defendant concedes as much. Def. Br. At 27-28. Moreover, the question as to whether an off label use of a drug may be "medically accepted" typically cannot be resolved without a fuller factual record, and thus is often an inappropriate basis on which to dismiss a case

---

[3] The Medicaid statute contains similar provisions for coverage of prescription drugs. Medicaid defines a "covered outpatient drug" as a drug dispensed by prescription and approved as safe and effective under the Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. §§ 355 & 357, but does not include drugs "used for a medical indication which is not a medically accepted indication." 42 U.S.C. § 1396r-8(k)(2). "Medically accepted indication" is defined as including "any use for a covered outpatient drug which is approved under the FDCA," or "which is supported by one or more citations included or approved for inclusion in any of the [three compendia listed above]." *Id.* at § 1396r-8(k)(6). Medicare Part D incorporates by reference the provisions of the Medicaid Drug Rebate Statute pertaining to "covered outpatient drugs." 42 U.S.C. § 1395w-102(e). Thus, under these statutory schemes, an off-label use that is not "supported by a citation" in the compendia falls outside the definition of a covered outpatient drug, and federal health care programs are free to deny payment for resulting claims for such an off-label use.

at the pleading stage.

Courts have held that when a drug is prescribed for a use that is not covered by federal programs, the resulting claim for reimbursement of that prescription is "false" under the FCA. See United States ex rel. Rost v. Pfizer, Inc., 253 F.R.D. 11, 13-14 (D. Mass. 2008); United States ex rel. Franklin v. Parke-Davis, 2003 WL 22048255, at *2 (D. Mass. Aug. 22, 2003) (Parke-Davis II); Parke-Davis I, 147 F. Supp. 2d at 51-53 ("[T]he alleged FCA violation arises - not from unlawful off-label marketing activity itself - but from the submission of Medicaid claims for uncovered off-label uses induced by Defendant's fraudulent conduct."); Strom, 676 F. Supp. 2d at 891 ("Because the [Medicare] statute permits reimbursement only for 'reasonable and necessary' treatments, [an off-label prescription] in a context where it is not 'reasonable' or 'necessary' would be statutorily ineligible for reimbursement. This satisfies the FCA's requirement of a 'false' statement."). Court have similarly found in other contexts that claims for services not covered by Medicare are false under the FCA. See Peterson v. Weinberger, 508 F.2d 45, 52 (5th Cir. 1975).

This principle is consistent with a host of other situations in which courts have found FCA liability even though there may be nothing false on the face of the claims in question. See United States ex rel. Marcus v. Hess, 317 U.S. 537, 543-44 (1943) (bid rigging to obtain a contract renders the claims submitted under the fraudulently procured contract false); United States v. Rogan, 517 F.3d 449, 452 (7th Cir. 2008) (claim may be ineligible for payment where physician received a kickback for the billed service); United States v. McLeod, 721 F.2d 282, 284 (9th Cir. 1983) (deposit of a facially valid check to which defendant was not entitled is a false claim); Scolnick v. United States, 331 F.2d 598, 599 (1st Cir. 1964) (same); United States v.

Incorporated Village of Island Park, 888 F. Supp. 419, 440 (E.D.N.Y. 1995) (facially-accurate claims resulting from conduct that violated fair housing and non-discrimination provisions in HUD program were false within the meaning of the FCA).

When a claim is false because it is for a non-reimbursable item (*e.g.*, an off-label indication that is not otherwise covered by federal health programs), an analysis under a "certification theory" is simply inapposite. Whether the provider "certified" on the claim for payment that the prescribed usage was on-label or otherwise reimbursable is irrelevant. Rather, the core question for "falsity" under the FCA is whether the government received a bill from a healthcare provider for an item or service that was not legally reimbursable. Whether other information on the claim form is "truthful," such as the identity of the patient or the name of the drug used, has no bearing on the fact that a prescription was for a non-covered, non-reimbursable use and thus constitutes a false claim within the meaning of the FCA.

### B. Claims Resulting from Illegal Kickbacks are False Claims.

Defendants incorrectly argue that payment of claims tainted by kickbacks are not false claims, and further mistakenly asks that such claims be dismissed because they do not contain any false certification. Def. Br. At 32 -37. To the contrary, claims for medical services which are tainted by kickbacks violate a fundamental condition of payment under federal health care programs.

Compliance with the Anti Kickback Statute ("AKS") is a fundamental condition of payment under all federal health care programs. Congress made the payment or receipt of kickbacks a felony, specifying that this prohibition covers items "for which payment may be made in whole or in part under a Federal health care program." 42 U.S.C. § 1320a-7b(b). Thus,

as a practical matter, compliance with the AKS is a condition of payment because the government does not pay for illegal goods or services.

The rationale for non-payment of kickback-tainted claims is clear: in such circumstances the government has no assurance that the medical services, devices or drugs were provided because they were "reasonable and necessary" for the treatment of the patient, see 42 U.S.C. § 1395y(a)(1) (prohibiting payments not "reasonable and necessary"), rather than because they were in the financial interests of the provider. Just as the government is entitled to cancel a contract tainted by kickbacks, see United States v. Acme Process Equipment Company, 385 U.S. 138 (1966), the government is not required to pay for medical services, devices, or drugs tainted by kickbacks, see United States v. Ruttenberg, 625 F.2d 173, 177 (7th Cir. 1980). Otherwise, the government would be "in the position of funding illegal kickbacks after the fact." United States ex rel. Bidani v. Lewis, 264 F. Supp. 2d at 616.

Thus, a claim for payment of a drug prescription or other medical treatment tainted by kickbacks is factually false in the same way that a claim for payment is false where the defendant delivers a defective product or goods whose price is inflated by the fraudulent conduct of a subcontractor. See United States ex rel. Marcus v. Hess, 317 U.S. 537 (1943) (holding subcontractor liable under FCA where its bid-rigging scheme caused contractor to present inflated claims to government); United States v. Bornstein, 423 U.S. 303 (1976) (holding that claims submitted by an innocent prime contractor were "false" within the meaning of the FCA due to fraudulent acts of subcontractor). This is true even if the person submitting the claim to the government makes no express false statements and even if he is unaware of the underlying falsity of his claim. See United States v. Rivera, 55 F.3d 703, 707 (1st Cir. 1995) (the FCA

reaches fraud where innocent person presents claims for payment to the government); Mason v. Medline Indus., Inc., 2010 WL 653542, at *7 (N.D. Ill. Feb. 18, 2010) ("It is well-established that a person may submit a false claim to the government without knowing it is false.").

The AKS was recently amended to clarify that all claims resulting from illegal kickbacks are false claims within the meaning of the FCA. The Patient Protection and Affordable Care Act ("PPACA"), Pub. L. No. 111-148, § 6402(f)(1) (2010), confirms that an underlying violation of the AKS renders a subsequent claim false. Specifically, the AKS now provides that "a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim for purposes of [the FCA]." See PPACA § 6402(f), codified at 42 U.S.C. § 1320a-7b(g). The amendment thus clarifies that all claims for services that were tainted by the payment of a kickback are false claims within the meaning of the FCA, regardless of what entity ultimately submitted the claims for payment. As the Supreme Court has observed, such subsequent litigation is helpful in construing the meaning of an earlier statutory provision. Loving v. United States, 517 U.S. 748, 770 (1996); see also Bates v. United States, 522 U.S. 23, 32 (1997) (rejecting argument that clarifying amendments demonstrated that prior version of statute did not cover the conduct in question). Thus, there should now be no doubt that a claim resulting from an illegal kickback is a false claim under the FCA, regardless of what "certifications" are made by the person submitting the claim.

A violation of the AKS also is grounds for FCA liability under a false certification theory. See, e.g., AWP Litigation, 491 F. Supp. 2d at 17; McNutt, 423 F.3d at 1259-60; United States ex rel. Jamison v. McKesson Corp., 2009 WL 3176168, at *11-12 (N.D. Miss. 2009); United States ex rel. Pogue v. Diabetic Treatment Centers of Am., et al., 565 F. Supp. 2d 153, 158-59 (D.D.C.

11

2008) ("*Pogue II*"); United States ex rel. Bartless v. Tyrone Hosp, Inc., 234 F.R.D. 113, 121 (W.D. Pa. 2006); Rogan, 459 F. Supp. 2d 692, 718 (N.D. Ill. 2006), *aff'd*, 517 F.3d 449 (7th Cir. 2008); *Parke-Davis II*, 2003 WL 22048255, at *7; United States ex rel. Bidani v. Lewis, 264 F. Supp. 2d 612, 615 (N.D. Ill. 2003); United States ex rel. Barrett v. Columbia/HCA Healthcare, 251 F. Supp. 2d 28, 32-34 (D.D.C. 2003); United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., 238 F. Supp. 2d 258, 264 (D.D.C. 2002 ("*Pogue I*"); United States ex rel. Kneepkins v. Gambro Healthcare, 115 F. Supp. 2d 35, 43 (D. Mass. 2000). "To state otherwise would be to allow participation and reimbursement for supplies purchased illegally only because the claimant had the luck of not being caught and convicted in the first place. Reimbursing the claimant for the supplies would put the government in the position of funding illegal kickbacks after the fact." Bidani, 264 F. Supp. 2d at 615. The rationale of such cases is that the FCA is a remedial statute that should be read broadly and compliance with the AKS is a condition of payment under the Medicare program.

Moreover, even under the rigid, and incorrect, standard espoused by defendant, the express language of the AKS combined with the Medicare provider enrollment agreement and the Medicare claim form provide more than a sufficient basis on which to find an express statement that compliance with the AKS is a condition of payment. The AKS does link the illegal kickbacks with the payment of claims by federal health care programs. That the AKS is a condition of payment is further supported by the Medicare provider enrollment agreement that states that "payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with . . . the [AKS]." Moreover, the claim form itself that is submitted to seek payment from the Medicare program contains a certification of compliance with all

12

applicable laws. Thus, these statements taken together are more than enough to satisfy the requirement of an express statement that claims that result from illegal kickbacks are not eligible for payment by Medicare. Indeed, one court has held that the provider enrollment agreement alone "comports with even the most parsimonious application of the implied certification theory." Pogue II, 565 F. Supp. 2d at 159. The practical effect of defendant's argument here is that there may be a bounty of evidence demonstrating that a drug company *knows* that claims resulting from illegal kickbacks are not eligible for payment and *knows* that a doctor to whom kickbacks were paid submitted (or caused to be sumitted) claims to federal health programs, yet the drug company may nonetheless escape liability under the FCA because the AKS does not "expressly" state that such claims are not payable. The rigidity of this analysis should be rejected in favor of an interpretation that furthers, not frustrates, the remedial goals of the FCA.

### III. The FCA Does Not Contain a Double Falsehood Requirement.

Defendants are incorrect in suggesting that the claim must contain false certification or a separate false statement in order to be a false claim. Def Br. at 31-32. As is clear from the language of the statute, the FCA does not require proof of double falsity – a false claim *and* a false statement. The first two sections of the FCA provide independent and distinct bases for FCA liability. *Compare* 31 U.S.C. § 3729(a)(1) (liability for false claims) *with* (a)(2) (liability for false statements).[4] By its very terms, Section 3729(a)(1) only requires that the defendant presented or caused the presentment of a false claim, not that the defendant made a false statement or lied on the claim itself. See United States ex rel. Rost v. Pfizer, Inc., 507 F.3d 720,

---

[4] The FCA was recently amended and these sections were recodified as 31 U.S.C. §§ 3729(a)(1)(A) & (a)(1)(B).

731-33 (1st Cir. 2007) (separately analyzing false statement allegations under Section 3729(a)(2)); United States ex rel. Franklin v. Parke-Davis, 2003 WL 22048255, at *2 (D. Mass. Aug. 22, 2003) (same). Accordingly, a case cited by Aventis, United States ex rel. Hess v. Sanofi-Synthelabo, Inc., 2006 WL 1064127, at *7 (E.D. Mo. Apr. 21, 2006), was wrongly decided because it demanded a showing of "extra" false statements and failed all together to consider liability under Section (a)(1), which does not require proof of any false statement at all.

The *Hess* court also erred on the issue of materiality, as the question as to whether a claim is even eligible for payment is obviously material to the Government's decision to pay that claim. The court should reject any suggestion by defendants that a claim for payment of a non-reimbursable, off-label drug prescription cannot be material if the government doesn't ask for information that would reveal that the claim is not covered by Medicare or Medicaid. The Third Circuit has found that the materiality requirement may be satisfied if a reasonable person would know that the government agency would consider the information in question important to its payment decision. Cantekin, 192 F.3d at 416. Other courts have defined materiality similarly, stating that a false claim is material if it "has a natural tendency to influence agency action or is capable of influencing agency action." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 785 (4th Cir. 1999).[5]

Courts have long held that those who deal with the Government must "turn square corners" and cannot take advantage of government officials who may have too few resources to catch attempted fraud at its inception. See, e.g., Rock Island, Arkansas & Louisiana R.R. v.

---

[5] The FCA has also been recently amended to expressly define "materiality" in this fashion. *See* 31 U.S.C. § 3729(b)(4) (2009) (defining "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property").

United States, 254 U.S. 141, 143 (1920); Rogan, 517 F.3d at 452 ("The United States is entitled to guard the public fisc against schemes designed to take advantage of overworked, harried, or inattentive disbursing officers."). The Government processes millions of claims for payment by federal health programs each year, and requiring it, as defendants apparently suggest, to examine every claim it pays for potential underlying misconduct is patently unreasonable.

Furthermore, in order for a statement to be "false" under section 3729(a)(2), it need not be an affirmative misrepresentation; a material omission will suffice: "[H]alf the truth may obviously amount to a lie, if it is understood to be the whole." W. Page Keeton, Prosser & Keeton on the Law of Torts § 106, at 738 (5th ed. 1984); see Luckey v. Baxter Healthcare Corp., 183 F.3d 730, 732 (7th Cir. 1999) (observing that a half-truth may amount to a false statement under the FCA in certain circumstances); United States ex rel. Schwedt v. Planning Research Corp., 59 F.3d 196, 199 (D.C. Cir. 1995) (finding that false progress reports may constitute false statements under the FCA). Thus, a statement urging a physician to prescribe a drug for an unapproved use could well amount to a half-truth and satisfy the false statement requirement of section (a)(2), where, for example, the drug sales representative fails to mention evidence that does not support the drug's safety or efficacy for the unapproved use or that the FDA has specifically denied approval for that indication.

## IV. The United States' Release in the Anzemet Case was Limited.

As is clear from a prior civil settlement agreement and release among the United States, defendant, and a different relator, the conduct at issue there was limited to allegations that Aventis' set and reported *false and inflated prices* of Anzemet, and then used the artificial spread between those false and inflated prices and the real prices of the drugs in order to market and

15

promote them. The settlement further alleged that Aventis knew that the false prices would cause claims to be submitted to federal health care programs for reimbursement that was substantially higher than the true cost of the drugs. That settlement did not concern off-label marketing or any other promotional conduct relating to Anzemet. Thus, that settlement did not merely "include" such conduct, see Def. Br. At 10, but was in fact specifically limited to it, and thus, did not provide defendant with a release as to its marketing and promotional conduct generally.

Respectfully submitted,
ZANE DAVID MEMEGER
United States Attorney


_Margaret L. Hutchinson/SDB_
MARGARET L. HUTCHINSON
Assistant United States Attorney
Chief, Civil Division

_Susan Dein Bricklin_
SUSAN DEIN BRICKLIN
Assistant United States Attorney

Dated: 1/18/11

CERTIFICATE OF SERVICE

I hereby certify that on this date a true and correct copy of the foregoing statement of interest was served by first class mail, postage prepaid, upon the following:

Nicholas Carl Harbist, Esquire
Stephen M. Orlofsky, Esquire
Blank Rome, LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103

Carl D. Poplar, Esquire
1010 Kings Highway South
Building Two
Cherry Hill, NJ 08034

Richard L. Scheff, Esquire
Ellen C. Brotman, Esquire
Montgomery McCracken Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109

SUSAN DEIN BRICKLIN
Assistant United States Attorney

Date: 1/18/11