IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>ex. rel. YOASH GOHIL,<br><br>Plaintiff/Relator,<br><br>vs.<br><br>SANOFI-AVENTIS U.S. INC.; AVENTIS, INC., AVENTIS PHARMACEUTICALS, INC., and JOHN DOES #1-50, FICTITIOUS NAMES,<br><br>Defendants. | No. 02-cv-2964 (LFS) |

**PLAINTIFF/RELATOR'S RESPONSE TO DEFENDANTS'
NOTICE OF NEW AUTHORITY**

Plaintiff/Relator Yoash Gohil ("Plaintiff") hereby files this Response to Defendants' Notice of New Authority dated October 24, 2014 regarding a recent decision from the United States Court of Appeals for the Third Circuit, *United States ex rel. Schumann v. AstraZeneca Pharm. L.P., et al.*, No. 13-1489, 2014 WL 5315251 (3d Cir. October 20, 2014) (attached as Ex. A to Defendants' Notice of New Authority). While the Third Circuit in *Schumann* did affirm the dismissal of a False Claims Act suit based on lack of subject matter jurisdiction, the facts presented in that case bear no resemblance to those presented here.

Nor, separately, does *Schumann* provide any novel principles of law on the issues before this Court. Rather, it was guided by and cited to the well-settled subject matter jurisdiction and original source law of this Circuit – *see Schumann*, 2014 WL 5315251 at \*\*6-7 (citing *U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.* 944 F.2d 1149 (3d Cir. 1991); *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506 (3d Cir. 2007); *U.S. ex rel.*

1

*Paranich v. Sorgnard*, 396 F.3d 326 (3d. Cir. 2005); *U.S. ex rel. Mistick PBT v. Housing Auth. of the City of Pitt.*, 186 F.3d 376 (3d. Cir. 1999); *U.S. ex rel. Dunleavy v. Cnty. of Del.*, 123 F.3d 734 (3d Cir. 1997)) – that has been previously briefed at length by both parties.

Having no novel statements of law to rely upon from *Schumann*, Defendants attempt to analogize the facts presented in *Schumann* to those presented here – an effort this Court can and should summarily dispose of. According to Defendants, the two cases are "similar" because both Schumann and Gohil filed Amended Complaints and Declarations during the course of the litigation, neither of which is even remotely compelling or persuasive.

Importantly, Defendants fail to mention the most critical and dispositive factual difference between the two cases: Schumann never worked for the companies alleged to have engaged in wrongdoing while Gohil worked for Aventis and participated in the off-label marketing and kickback scheme for almost three years.[1] The fact that Schumann never worked for the pharmaceutical company defendants – and hence did not have direct, firsthand knowledge of the alleged wrongdoing was not lost on the Court. With respect to defendant, Bristol Myers Squibb (BMS), the Court summarized Schumann's knowledge (or lack thereof):

- "Schumann states that he learned of BMS's conduct through his job at Medco." *Schumann*, 2014 WL 5315251 at *3.

- "Specifically, he [Schumann] states in the CFAC that he learned of BMS's allegedly improper conduct by reviewing confidential data fee and rebate agreements, discussing them with his Medco colleagues and BMS officials and negotiating their extension." *Id*. at * 7.

- "He [Schumann] also states that his experience led him to conclude that BMS could not have afforded to enter into the rebate and data free agreements if it was complying with applicable anti-kickback and best-price statutes." *Id*.

---

[1] Defendants effectively concede this important distinguishing fact in the final sentence of their Notice of New Authority. *See* Defendants' Notice of New Authority at 3 ("At a bare minimum, *Schumann* supports dismissal with prejudice of Plaintiff's FCA claims pre-dating (1996-99) and post dating (2002-04) his employ with Aventis.").

Not surprisingly, the fact that Schumann was not employed by BMS and did not participate in any of the fraudulent activity is what ultimately prompted the Third Circuit to find he was not an original source:

> None of these allegations is sufficient for Schumann to plead that he is an original source of the key components of his claims against BMS. First, knowledge of a scheme is not direct when it is gained by reviewing files and discussing the documents therein with individuals who actually participated in the memorialized events… Second, Schumann's description of his involvement in Medco's business with BMS, including negotiating rebate and data fee arrangements and recognizing that BMS was aware of its best-price reporting obligations, does not evince direct and independent knowledge of any improper kickback or inaccurate best-price report…Finally, Schumann's conclusions that BMS intended to pay kickbacks to Medco and to submit false claims to the government, based on his experience in and understanding of the PBM industry, do not qualify as independent knowledge under the FCA…

*Id.* at *8. The factual basis of Schumann's allegations against the AstraZeneca defendants mirrored those asserted against BMS and were dismissed for similar reasons. *Id*. at **8-9.

By contrast, here, Gohil worked as a Senior Oncology Sales Specialist in the Oncology Division of Aventis Pharmaceuticals, Inc. from the fall of 1999 until June 2002. In this capacity, Gohil was responsible for Defendants' sales efforts in the Philadelphia sales territory and on Defendants' behalf to market Taxotere and Anzemet, two of the Defendants' chemotherapy agents to healthcare providers. Gohil obtained direct, first-hand knowledge regarding defendants' strategies and activities in fraudulently marketing both of these chemotherapy agents, and specifically:

- Was trained by Aventis on the nationwide fraudulent marketing of Taxotere for off-label use during the initial stages of his employment.

- Observed and participated in the implementation of the off-label marketing and kickback scheme during the course of his employment.

- Was forced out after complaining about the illegal marketing strategy and personally witnessed the continuation of the scheme after he was terminated by Aventis based upon his continued work in the field of oncology.

Because Defendants prefer to argue these issues in the abstract without citations to the record, Gohil refers the Court to a few examples that plainly demonstrate his direct and independent knowledge of Defendants' fraudulent marketing and kickback schemes obtained during the course of his employment with Defendants[2]:

- Gohil explained (during his deposition in this case) how he was trained by Aventis to promote Taxotere for off-label use:

  …But during the training time they [Aventis] had provided us documents, which were from the previous years or year and mid of nineties. And also the trainers as well as the representative who was supporting the training did discuss in the workshops and during the presentations that how successful in promoting Taxotere in off-label situations in various off-label situations in past and how doctor responded and what was their counter answer and how they were convincing the health care providers to use Taxotere in off-label situations. Opp. Br. at 25, Ex. A at 126:8-19.

- Gohil testified at length during his three days of deposition in the CEPA case regarding his direct and independent knowledge of and direct participation in Defendants' off-label marketing, illegal remuneration and other activity in furtherance of its fraudulent marketing and kickback scheme. *See* Opp. Br. at 26, Ex. J at 118:17-120:1 (Gohil was instructed to present off-label data to doctors to encourage unapproved treatments using Taxotere); Ex. K at 288:13-291:10 (Gohil attended a paid promotional speech by a doctor engaged by Aventis); Ex. K at 296:2-15 (Gohil's supervisor attempted to obtain automatic substitution of the more expensive Taxotere for Taxol prescriptions through grants); Ex. G at 427:1-20 (Aventis instructed Gohil to use off-label marketing materials); Ex. G at 472:3-19 (Gohil witnessed Aventis promising to provide grant money to doctors to overcome the failure of the predecessor drug to Taxotere).[3]

---

[2] Gohil further maintains that there was no public disclosure of the essential elements of the claims. *See* Gohil's Brief in Opposition to Motion to Dismiss ("Opp. Br.") at 12-19.

[3] Gohil's information about the continuation of the scheme post-employment flows from matters which he had direct knowledge while employed and he personally witnessed continuation of the scheme during his subsequent employment. *See* Opp. Br. at 26-27, citing *Stinson*, 944 F. 2d at 1160 (noting that a relator can have direct and independent knowledge – thus qualifying as an original source – for acts that occur after the relator leaves his employment with the fraudulent organization as "long as the allegations flow from matters over which he had direct knowledge while employed."). And Gohil's training on Aventis's fraudulent marketing scheme and instruction on how it conducted its fraudulent scheme in the past, as well as his participation in continuing the scheme qualifies as

- Gohil testified in detail at his deposition in this case regarding his direct involvement with a four-year grant given to the University of Pennsylvania for $100,000, the last installment payment of which was made in 2000. *See* Opp. Br. at 21, Ex. A at 131:17-132:9).

- Business plans drafted by Gohil and his marketing partners reflecting the kickback information (including preceptorship payments, speaker honorarium, tickets to sporting events for physicians' families, study grants and unrestricted grants) and expected return on investment that were produced to the Government in May 2002 and to Defendants during jurisdictional discovery in April 2008.

- Recorded voicemails by various managers and sales specialists of Aventis received by Gohil and presenting the information of kickbacks using preceptorship payments, speaker honorarium, tickets to sporting events for physicians' families, study grants and unrestricted grants that were produced to the Government in July 2002 and to Defendants during jurisdictional discovery in October 2010.

The law is well settled that this information obtained during the course of Gohil's employment at Aventis is "direct" and "independent" knowledge for purposes of the FCA's original source analysis. *See U.S. ex rel. Jones v. Horizon Healthcare Corp.*, 160 F.3d 326, 333 (6th Cir. 1998); *U.S. ex rel. Barajas v. Northrop Corp.*, 5 F.3d 407, 411 (9th Cir. 1993); *U.S. ex rel. Merena v. SmithKline Beecham Corp.*, 114 F. Supp. 2d 352, 357 (E.D. Pa. 2000); *U.S. ex rel. Haskins v. Omega Inst., Inc.*, 25 F. Supp. 2d 510, 514 (D.N.J. 1998).

Defendants, on the other hand, provide no citations to the record to show Gohil's lack of original source status or to establish their oft-repeated claim that Gohil obtained the information upon which his allegations are based from discovery in the CEPA case. *See* Opp. Br. at 21 and Ex. H (explaining that the essential claims asserted in the Second Amended Complaint mirrored the allegations in the First Amended Complaint, which was filed ***before*** Gohil even filed the CEPA case).[4]

---

direct and independent knowledge of the scheme for the timeframe prior to his employment. *See* Opp. Br. at 25-26, Ex. A at 126:8-19.

[4]As the Court in *Dunleavy* explained, "section 3730(e)(4) [public disclosure bar] applies only when information has been publicly disclosed through an enumerated method ***prior*** to the filing of a *qui tam* suit based on that information" and the relator is not the original source of the information. *Dunleavy*, 123 F.3d at 746 (emphasis

Gohil's direct participation in the off-label marketing and kickback activity at issue by virtue of his position as a Senior Oncology Sales Specialist for the Defendants illustrates why the facts presented here, and those presented in *Schumann*, bear no resemblance. Indeed, the jurisdictional discovery taken in this case unequivocally supports Gohil's status as an original source under the law as he learned of the fraud as an insider, directly through his employment with Aventis, *Stinson*, 944 F.2d at 1160-61 (original source need not know "all relevant information" and acquires direct knowledge when he personally participates in some aspect of the fraudulent scheme) (citing *Houck ex rel. United States v. Folding Carton Admin. Comm.*, 881 F.2d 494, 505 (7th Cir. 1989)), and *Schumann* does nothing to change this.

        Respectfully submitted,

        *s/ Stephen M. Orlofsky*
        BLANK ROME LLP
        A Pennsylvania LLP
        STEPHEN M. ORLOFSKY (Pa. ID 31633)
        NICHOLAS C. HARBIST (Pa. ID 35210)
        DAVID C. KISTLER (*Pro Hac Vice*)
        One Logan Square
        130 North 18th Street
        Philadelphia, PA 19103-6998
        (215) 569-5500

        CARL D. POPLAR, P.A.
        CARL D. POPLAR (*Pro Hac Vice*)
        1010 Kings Highway South, Building 2
        Cherry Hill, NJ 08034
        (856) 216-9979

        *Attorneys for Plaintiff/Relator,*
        *Yoash Gohil*

Dated: October 30, 2014

---

added). Here, Gohil is an undisputed original source.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2014, I caused a true and correct copy of the foregoing Response to Defendants' Notice of New Authority to be served via the Court's electronic case filing system on the following counsel of record:

Robert J. McCully
Shook Hardy & Bacon LLP
2555 Grand Blvd
Kansas City, MO 64108

-and-

Richard L. Scheff
Michael B. Hayes
Montgomery McCracken Walker & Rhoads LLP
123 South Broad Street
Philadelphia, Pa 19109

*Attorneys for Defendants Sanofi-Aventis U.S. Inc.,
Aventis, Inc., and Aventis Pharmaceuticals, Inc.*

                                              */s/ Stephen M. Orlofsky*
                                              STEPHEN M. ORLOFSKY